# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDA HOULE, KELLY REESE,  :
AND SUSAN STERNER,  :
:
         **Plaintiffs,**  :
v.  :    **3:19-CV-514**
:    **(JUDGE MARIANI)**
WALMART INC. formerly  :
WAL-MART STORES, INC.,  :
:
         **Defendants.**  :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On Jun 19, 2001, Betty Dukes filed a putative class action complaint against

Defendant Wal-Mart Inc. ("Walmart") in the Northern District of California on behalf of

herself and approximately 1.5 million current or former female Walmart employees across

the country. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366, 131 S. Ct. 2541, 2561, 180

L. Ed. 2d 374 (2011). The District Court and the Court of Appeals approved the class's

certification. *Dukes*, 564 US at 342, 131 S. Ct. 2541. On June 20, 2011, the Supreme Court

reversed the class certification order. *Dukes*, 564 US at 359, 131 S. Ct. 2541.

The Northern District of California tolled the claims of the former class members as

follows: members who possessed an Equal Employment Opportunity Commission ("EEOC")

notice to sue had until October 28, 2011 to file; members in non-deferral states who had

never filed an EEOC charge had until January 27, 2012 to file charges with the EEOC; and

members in deferral states had until May 25, 2012 to file charges with the EEOC. (Doc. 22, at ¶ 7–8; see also Doc. 22-1, Ex. A).

On May 2, 2012, Plaintiff Brenda Houle filed an EEOC charge. (Doc. 22, at ¶ 10). On May 21, 2012 Plaintiff Kelly Reese filed an EEOC charge. (Id. at ¶ 11). On April 30, 2012, Plaintiff Susan Sterner filed an EEOC charge. (Id. at ¶ 12). On March 19, 2019 each Plaintiff received a right to sue letter from the EEOC. (Id. at ¶¶ 10–12).

On June 11, 2019, Plaintiffs Brenda Houle, Kelly Reese and Susan Sterner filed an Amended Complaint against Defendant Walmart, alleging Walmart "illegally discriminated against them on the basis of their gender by paying them less than similarly-qualified or less-qualified male employees and by promoting them less quickly and less frequently than similarly-qualified or less-qualified male employees." (Id. at ¶ 1). Count I of the Amended Complaint alleges the Defendant's disparate treatment of women violates Title VII of the Civil Rights Act of 1964. (Id. at 20). Count II of the Amended Complaint alleges the Defendant's neutral policies have a disparate impact on women in violation of Title VII of the Civil Rights Act. (Id. at 21).

Plaintiffs are seeking monetary damages "including back pay, front pay, compensatory damages, and general and special damages for lost compensation and jobs benefits that they would have received but for the discriminatory practices of Walmart" (Id. at ¶ 128); "exemplary and punitive damages in an amount commensurate with Walmart's ability to pay and to deter future conduct" (Id. at ¶ 129); declaratory relief (Id. at ¶ 130);

costs, including reasonable attorneys' fees (*Id.* at ¶ 131); and pre- and post-judgment interest (*Id.* at ¶ 132).

On June 25, 2019, Defendant filed a Partial Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. 27). While this Motion was pending, Plaintiff Brenda Houle reached a settlement with Defendant. (Doc. 40, at ¶ 4). All claims related to Houle are moot and will not be addressed. The Partial Motion to Dismiss is now before the Court. The issues have been fully briefed and Defendant's Motion is ripe for disposition. For the reasons set forth below, the Court will grant in part and deny in part Defendant's Partial Motion to Dismiss.

## II. FACTUAL ALLEGATIONS

Plaintiffs' Amended Complaint (Doc. 22) alleges the following facts which, for the purposes of resolving Defendant's Partial Motion to Dismiss (Doc. 27), the Court takes as true:

Plaintiff Kelly Reese is a female resident of Cressona, Pennsylvania who was employed by Walmart Store #2535 in St. Clair, Pennsylvania from 2000 to 2004. (Doc. 22, at ¶ 16). Plaintiff Susan Sterner is a female resident of Pottsville, Pennsylvania who was also employed by Walmart Store #2535 in St. Clair, Pennsylvania from 2001 to the present. (*Id.* at ¶ 17). Defendant Walmart is a Delaware corporation headquartered in Bentonville, Arkansas with retail stores located throughout Pennsylvania. (*Id.* at ¶ 18).

Plaintiffs assert they exhausted their administrative remedies and complied with statutory prerequisites of Title VII by "timely [filing] charges of discrimination with the EEOC

pursuant to the deadline set by the United States District Court for the North District of California's August 19, 2011 Order." (*Id.* at ¶¶ 9, 13).

The time period relevant to this action is based on the limitations period from *Dukes*: "The limitations period starts on December 26, 1998, which is 300 days before the earliest charge filed with the EEOC by a former member of the *Dukes* class, and runs through the date of trial." (*Id.* at ¶ 14). During this time period, Walmart divided its retail operations into "six Walmart divisions, each consisting of approximately six regions." (*Id.* at ¶ 19). Plaintiffs were employed in Region 5. (*Id.*). Every store in this region had "the same job categories, job descriptions and management hierarchy." (*Id.* at ¶ 20).

The hierarchy was arranged as follows (from bottom to top): entry-level hourly Cashier, Sales Associate and Stocker; hourly Department Manager and Support Manager; the manager training program "MIT" participants; salaried Assistant Managers; Co-Manager; Store Manager; District Manager; and finally, Regional Vice President ("RVP"). (*Id.* at ¶¶ 20–24). Additionally, Region 5 had one Regional Personnel Manager ("RPM"). (*Id.* at ¶ 25).

In the relevant time period, Walmart has had three relevant pay policies: the 1998-2004 Hourly Pay Structure, the 2004 Pay Restructuring and the 2006 Pay Cap. (*Id.* at 6–9).

From 1998 until June 2004, Walmart assigned jobs to five classes, regardless of department. (*Id.* at ¶ 27). "Each successive job class had a higher minimum starting pay rate." (*Id.*). The starting pay rate for each class was set by the Store Manager within pay guidelines and subject to constraints and approval by District Managers and the RVP. (*Id.* at

¶¶ 28–29). A Store Manager had the discretion to create an "exception" and pay an employee above or below established pay guidelines. (*Id.* at ¶ 29).

Store Managers "were not required to use job-related criteria, such as job performance or experience, in setting, adjusting, or approving compensation." (*Id.* at ¶ 34). Store Managers were not told "the weight to be accorded any particular requirement" and they were not required to document the reasons for any pay decisions. (*Id.*). District Managers and the RVP "did not hold the Store Managers... accountable," or ensure the reasons for decisions comported with the law. (*Id.*). "Women who held hourly positions...have been regularly paid less than similarly-situated men, although, on average, those women have more seniority and higher performance ratings than their male counterparts... even when nondiscriminatory objective factors, such as seniority, performance, store location, and other factors are taken into account." (*Id.* at ¶ 35).

After the 2004 Pay Restructuring, Walmart assigned jobs which had all previously been in one pay class to separate classes depending on department. (*Id.* at ¶ 39). Hourly pay rates, therefore, differed by department. (*Id.*). "[J]obs in departments in which women were over-represented were assigned to lower jobs classes, while those same job titles in departments over-represented by men were assigned to higher job classes," and therefore higher pay. (*Id.* at ¶ 40).

In 2006, Walmart changed its pay policy to add "a cap on the pay permitted for each job class." (*Id.* at ¶ 41). Lower job classes were subject to lower pay caps, "further impacting the pay of women relegated to the lower job classes." (*Id.*).

There are four relevant policies regarding promotions: the lack of formal job postings for certain positions, travel and relocation requirements for certain positions, the promotional system instituted in 2007, and the lack of job-related criteria for promotions. (*Id.* at 9–14).

Support managers are "the highest level hourly supervisor positions." (*Id.* at ¶ 42). Walmart does not post openings for this position, nor does it have a "formal application process" or "job-related criteria" for promotion to support manager. (*Id.*).

The MIT Program is a prerequisite for salaried management positions; but, before 2003, there was no application process or job postings for the program. (*Id.* at ¶ 43). "Hourly employees were not provided any information regarding how to enter management, or what the requirements or qualifications were for entering management, or how to apply for the MIT Program." (*Id.*).

From January 2003 through 2006, Walmart used a "posting system for entry into the MIT Program," wherein positions were posted "for one week, a few times per year." (*Id.* at 44). Candidates had to agree to travel and relocation conditions. These requirements were "more likely to discourage women than men," and were not "a fair representation of the actual job requirements." (*Id.*).

In 2007, Walmart instituted a new system for all promotions, which "permitted employees to register in advance for the positions and geographic areas in which they were interested." (*Id.* at ¶ 46). The system "automatically applied the minimum qualifications... and presented the hiring manager with a set of candidates." (*Id.*). Though, it was "common" for managers to engage in "pre-selection," a process in which managers post a position to see which candidates are presented and close the position without selecting a candidate "because the manager's pre-chosen candidate was not included in the pool." (*Id.*).

From 2003-2009, District Managers and the RPM used "uniform guidelines" to evaluate candidates for the MIT Program, including: "minimum tenure, age (18 years or older), absence of current 'active' discipline, satisfactory recent performance evaluations, and willingness to relocate." (*Id.* at ¶ 47–48). Though, Walmart did not provide "job-related criteria" for evaluation. (*Id.* at ¶ 48).

Managers are not required to, and do not, use "valid, job-related factors in making the promotion selections within Region 5." (*Id.* at ¶ 50). Walmart and its managers do not document "the reasons for selecting particular employees for promotion" or "which employees have been denied consideration for promotion because of their inability to comply with these relocation, travel, and scheduling requirements." (*Id.* at ¶ 51).

Because Walmart does not provide "job-related compensation and promotion criteria," managers and supervisors "rely on discriminatory stereotypes and biased views about women." (*Id.* at ¶ 65). Women are "often subjected to severe gender stereotyping,

7

and are rejected out of hand for most openings in 'masculine' departments such as sporting goods, hardware, etc." (*Id.* at ¶ 42). Walmart's Store Managers in Region 5 "often consider women only for 'female' departments, such as health and beauty, jewelry, softlines and the service desk." (*Id.* at ¶ 70). Additionally, Region 5's managers have "justified denying promotions to women or paying them less than their male employees because of perceived family obligations of the women and male responsibility to support their families or because of their presumed inability to relocate." (*Id.* at ¶ 71). Female employees in Region 5 have been "far less likely than their male counterparts to receive promotion to management track positions" and they must wait "significantly longer to be promoted" even though they have "equal or better qualifications than male counterparts." (*Id.* at ¶ 53–54).

Walmart management has "long known about gender disparities in promotion and has failed to take appropriate remedial action." (*Id.* at ¶ 56). Walmart has never determined if these policies are "consistent with business necessity or whether less discriminatory alternatives to these policies and practices could be adopted." (*Id.* at ¶ 64).

Plaintiff Kelly Reese was employed by Walmart from 2000 to 2004. (*Id.* at ¶ 87). She already earned an associate's degree and working towards a bachelor's degree. (*Id.*). She was hired as a sales associate and was promoted to department manager. (*Id.* at ¶ 88).

In 2001, Reese "began expressing interest in selection into the MIT Program," and inquired at least three times about open positions (*Id.* at ¶ 89–90). Reese's managers told her she "needed to work in every department in the store." (*Id.* at ¶ 90). Reese's male co-

workers, Keith Erlich and Paul LNU, were both selected for the MIT Program despite not working in every department. (*Id.* at ¶ 91–92). Reese was also told "Walmart sought out those with higher education to be promoted into management;" but, she witnessed male coworkers without a degree being promoted through the MIT Program. (*Id.* at ¶ 93).

Reese "believes that her male co-workers were paid more than she was for performing the same or similar duties." (*Id.* at ¶ 94). Walmart's policy of "strongly discouraging their employees from sharing information regarding pay" prevents her from knowing "specific amounts of pay disparities." (*Id.*).

In 2004, Reese voluntarily terminated her employment with Walmart "because of her frustration at being passed over for advancement opportunities with Walmart." (*Id.* at ¶ 96).

Plaintiff Susan Sterner was hired as a lawn and garden associate by Walmart in 2001. (*Id.* at ¶ 98). Sterner's starting salary was $6.00 per hour and after one year she was given a $0.24 raise. (*Id.*). Male employees hired after Sterner in the same department were paid $7.25 per hour. (*Id.*). Male employees were paid approximately one dollar more per hour than female employees. (*Id.*). When Sterner asked her supervisor, Joel Distock, why male employees were paid more, he said "because they're men." (*Id.* at ¶ 101). The other two female employees in the department were "also paid less than the male employees who had significantly less experience." (*Id.* at ¶ 103).

In 2002, Sterner "expressed interest in being promoted to the department manager of the sports department." (*Id.* at ¶ 104). The promotion was ultimately given to Keith Erlich,

a male employee. (*Id.*). Sterner believes "this was based on a bias in favor [of] males

regarding sports." (*Id.*). The department manager position is a "stepping-stone" to higher

management positions; therefore, passing her over "curtailed Ms. Sterner's advancement in

Walmart's job hierarchy." (*Id.* at ¶ 105). The promotion also would have increased Sterner's

salary from $7.00 per hour to $8.00 per hour. (*Id.* at ¶ 106).

## III. STANDARD OF REVIEW

### A. Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power

authorized by Constitution and statute, which is not to be expanded by judicial

decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128

LEd.2d 391 (1994) (internal citations omitted).

> [T]he federal courts are without power to adjudicate the substantive claims in a
> lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal
> authority is, in a particular instance, open to question, it is incumbent upon the
> courts to resolve such doubts, one way or the other, before proceeding to a
> disposition of the merits.

*Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is

power to declare the law, and when it ceases to exist, the only function remaining to the

court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S.

(7 Wall.) 506, 514, 19 L.Ed. 264 (1868). This rule "'springs from the nature and limits of the

judicial power of the United States' and 'is inflexible and without exception.'" *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, C. & L M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). Moreover, "the burden of establishing the [existence of subject-matter jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (internal citations omitted). This is because, since the federal courts' jurisdiction is strictly limited by Constitution and statute, "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Id.*

A motion to dismiss for lack of subject-matter jurisdiction is properly made under Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of standing can be brought under Rule 12(b)(1) because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). When a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court should first consider a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, "all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F.Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

## B. Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6)

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant Walmart seeks partial dismissal of Plaintiffs' Amended Complaint. (*See generally*, Doc. 27). Defendant seeks to dismiss Count II in its entirety on three grounds: standing, exhaustion, and pleading sufficiency. Defendant also seeks to dismiss Plaintiff Reese's pay discrimination claim under Count I and Plaintiff Sterner's promotional and pay discrimination claims under Count I. The Court will address each of these arguments in turn.

### A. Count II: Disparate Impact

## 1. Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1)

Defendant Walmart seeks dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the theory that this Court lacks subject matter jurisdiction because Plaintiffs lack standing. (Doc. 30, at 11–16).

"The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). It is well settled that three elements must be satisfied to meet "the irreducible constitutional minimum of standing": (1) a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *U.S. v. Hays*, 515 U.S. 737, 742–743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Apart from the constitutional limitations, several prudential principles bear on the question of standing. First, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction", *Warth*, 422 U.S. at 499, 95 S.Ct. 2197, and a generalized grievance against allegedly illegal governmental conduct is therefore not sufficient for standing to invoke the federal judicial power, *Hays*, 515 U.S. at 743, 115 S.Ct. 2431. Second, "even

when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement,

... the plaintiff generally must assert his own legal rights and interests, and cannot rest his

claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95

S.Ct. 2197. Finally, "a plaintiff's grievance must arguably fall within the zone of interests

protected or regulated by the statutory provision or constitutional guarantee invoked in the

suit." *Bennett*, 520 U.S. at 162, 117 S.Ct. 1154.

Although "it is the burden of the party who seeks the exercise of jurisdiction in his

favor clearly to allege facts demonstrating that he is a proper party to invoke judicial

resolution of the dispute," *Hays*, 515 U.S. at 743, 115 S.Ct. 2431 (internal quotation marks

and citations omitted), when ruling on a motion to dismiss predicated on a lack of standing,

such as what Defendant Walmart is currently asking this Court to do,

> both the trial and reviewing courts must accept as true all material allegations
> of the complaint, and must construe the complaint in favor of the complaining
> party. At the same time, it is within the trial court's power to allow or to require
> the plaintiff to supply, by amendment to the complaint or by affidavits, further
> particularized allegations of fact deemed supportive of plaintiff's standing. If,
> after this opportunity, the plaintiff's standing does not adequately appear from
> all materials of record, the complaint must be dismissed.

*Warth*, 422 U.S. at 501–502, 95 S.Ct. 2197.

As the Third Circuit has reiterated, in analyzing the three elements necessary to

satisfy the constitutional minimum of standing,

> each of these elements must be supported in the same way as any other matter
> on which the plaintiff bears the burden of proof, i.e., with the manner and
> degree of evidence required at the successive stages of the litigation... While
> generalized allegations of injury may suffice at the pleading stage, a plaintiff

15

can no longer rest on such "mere allegations" in response to a summary judgment motion, but must set forth "specific facts" by affidavit or other evidence. As the Supreme Court concluded, because it is not sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings[,] it follows that the necessary factual predicate may not be gleaned from the briefs and arguments themselves.

*Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 161–162 (3d Cir. 2007) (internal quotation marks and citations omitted).

Plaintiffs have adequately demonstrated the injury element of standing. Plaintiffs both allege that they were paid and promoted less than their male coworkers. (Doc. 22, at ¶¶ 93–94, 100, 106). Plaintiffs concede their causes of actions are "limited by the terms of their employment and positions held." (Doc. 31, at 8). Therefore, because Reese terminated her employment in 2004, she cannot, and does not, claim any injury from the 2006 pay cap policy or the promotional system implemented in 2007. (*See generally,* Doc. 22).

Defendant's main argument is that Plaintiffs have not established traceability between these injuries and its neutral policies. (Doc. 30, at 13). At least for the purpose of proving standing, Plaintiffs have met their burden to prove that their alleged injuries are fairly traceable to Defendant's neutral policies on compensation and promotions.

Plaintiff Reese alleged that the policy granting discretion to managers without giving them job-related criteria to consider when making promotion decisions caused her to be passed over for the MIT Program despite inquiring three times. (Doc. 22, at ¶ 90). Moreover, she alleged the policy that granted discretion to managers over hourly pay

decisions caused her to be paid less than her male co-workers for the same or similar duties. (*Id.,* at ¶ 94).

Plaintiff Sterner similarly alleged that the policy granting managers discretion over hourly pay decisions caused her to be paid one dollar less per hour than her male coworkers. (Id. at ¶ 100). She also alleged that the lack of job-related criteria to guide promotional decisions caused her to be denied a department manager position. (Id. at ¶ 104–107). For the purposes of establishing standing, it is plausible that there is a causal connection between the injuries Plaintiffs allege and Defendant's policies.

Finally, it is likely that Plaintiffs' injuries will be redressed by a favorable decision. A decision in favor of the Plaintiffs would compensate them for any pay and promotional damages that could have been caused by Defendant's policies as well as ensuring that the Defendant is deterred from continuing to use those policies in the future.

Therefore, Plaintiffs have met their burden to prove standing. Defendant's Partial Motion to Dismiss on 12(b)(1) grounds for lack of standing is denied.

## 2. Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6)

### a. Exhaustion

Defendant next argues that Plaintiffs have not exhausted all administrative remedies as required under Title VII. (Doc. 30, at 11). The Court finds that only Sterner's disparate impact claim related to promotions has not been exhausted. All other disparate impact claims have been properly exhausted.

To plead a claim under Title VII, "a plaintiff must exhaust all required administrative remedies." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). Failure to exhaust is an affirmative defense; thus, the defendant "bears the burden or pleading and proving" a failure to exhaust. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice before filing a complaint in court. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1). Once the plaintiff has received a right-to-sue letter from the EEOC, she can file a complaint. *Burgh v. Borough Council,* 251 F.3d 465, 470 (3d Cir. 2001). Filing a charge of discrimination "permit[s] the EEOC to use informal, non-judicial means of reconciling the differences between the charging party and an employer." *Hicks v. ABT Assocs., Inc.,* 572 F.2d 960, 963 (3d Cir. 1978).

The EEOC investigation does not set an "outer limit on the scope of the civil complaint." *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir. 1984). Therefore, the civil complaint can include additional claims to be evaluated by a district court if the claim can "reasonably be expected to grow out of the charge of discrimination." *Anjelino v. New York Times Co.,* 200 F.3d 73, 94 (3d Cir. 1999); *see also Howze,* 750 F.2d 1212 (holding additional claims can be evaluated if they are "reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims").

When analyzing EEOC charges, the Court must remain aware that "charges are most often drafted by one who is not well versed in the art of legal description. Accordingly, the scope of the original charge should be liberally construed." *Hicks,* 572 F.2d at 965. An EEOC charge's "crucial element" is the factual allegation, not a legal argument; therefore, "In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). In fact, an EEOC charge is not required to contain any legal conclusions, "[I]t is up to the EEOC, not [Plaintiff], to investigate whether and under what legal theories discrimination might have occurred." *E.E.O.C. v. Kronos Inc.,* 620 F.3d 287, 300 (3d Cir. 2010)(citing 29 C.F.R. § 1601.12(a)–(b)).

A claim of disparate treatment is a form of discrimination in which an "employer simply treats some people less favorably than others" because of their status in a protected class. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1856, 52 L. Ed. 2d 396 (1977). A claim of disparate impact involves "employment practices that are facially neutral," but "in fact fall more harshly on one group then another and cannot be justified by business necessity." *Id.*

Here, the question is whether a disparate impact investigation would grow out of an EEOC charge alleging only disparate treatment. In *Ptasznik v. University of Pennsylvania*, the Third Circuit held that a disparate impact claim would not grow out of a charge that

made "no reference to allegations of other similarly-situated employees being harmed by facially neutral laws." 523 Fed.Appx. 156, 161 (3d Cir. 2013); *Cf. Showell v. Se. Pennsylvania Transp. Auth.*, No. CIV. A. 06-1574, 2008 WL 2389459, at *8 (E.D. Pa. June 10, 2008)(holding a disparate impact claim was exhausted even though the charge did not mention a neutral policy because the PHRC investigated at least six claims against the defendant simultaneously).

Defendant argues that Plaintiffs' disparate impact claims should be dismissed for failure to exhaust because their EEOC charges did not allege that "any facially-neutral policy (or, in fact, any policy at all) resulted in lower pay or the denial of any promotional opportunity." (Doc. 30, at 8–9). In her EEOC charge on pay discrimination, Plaintiff Reese stated, "Males worked in the same positions and were paid more money for the same or similar duties." (Doc. 22-4, at 4). Plaintiff Sterner stated in her EEOC charge:

> During my time at Wal-Mart, I believe female employees were paid less than male employees with equal or less tenure and experience. I was hired at $6.00 per hour in 2001. After approximately one year, I was given a $0.24 raise. Men who starting [sic] working in the lawn and garden department after me were started at $7.25 per hour while women were paid less. The two other women who were also employed in law and garden made less than the men, who had significantly less experience. I believe that Wal-Mart routinely pays men $1 more per hour than women despite the fact that the female employees work just as hard as the men."

(Doc. 22-6, at 4).

Reading Plaintiffs' EEOC charges liberally and drawing all inferences in Plaintiffs' favor, their charges describing pay discrimination could fairly be read to allege disparate

treatment and disparate impact. These charges are unlike the charge in *Ptasznik*, which only described the plaintiff's own treatment. 523 Fed.Appx. 156, 161. Reese did not limit her claims to only her wages. (Doc. 22-4, at 4). She alleged generally that male employees were paid more. (*Id.*). Sterner's charge specifically mentioned two other women in her department who were paid less than men. (Doc. 22-6, at 4). She also explicitly stated, "I believe that Wal-Mart *routinely* pays men $1 more per hour than women." (*Id.*)(emphasis added). Even though plaintiffs did not cite a specific pay policy, a reasonable EEOC investigation of a disparate impact claim could grow out of these charges. Therefore, plaintiffs' pay discrimination claims are exhausted.

In her EEOC charge on promotion discrimination, Reese wrote, "I also believe that male employees were given more promotional opportunities than female employees. I asked for promotional opportunities and was refused." (Doc. 22-4, at 4). In this charge, Reese spoke about the way she was specifically treated, but also about the way male employees in general were given more opportunities than female employees in general. Because the charge spoke about other employees as well, a disparate impact claim could reasonably be within the scope of the original charge. Reese has exhausted her disparate impact claim regarding promotions.

Sterner alleges in the Amended Complaint that she was denied a promotion to department manager of the sports department based on "a bias in favor of males regarding sports." (Doc. 22, at ¶ 104). However, neither Sterner's EEOC charge (Doc. 22-6) nor her

questionnaire (Doc. 31-3), mentions this incident or any other incident of promotion discrimination against herself or any female coworkers. Defendant's neutral promotion policies would not have been within the reasonable scope of this charge. Therefore, any disparate impact claim based on promotion discrimination brought by Sterner has not been exhausted and must be dismissed.

### b. Pleading Sufficiency

Defendant next seeks dismissal on the basis that Plaintiffs failed to meet their burden to make out a prima facie case. (Doc. 30, at 16). As a threshold question, the Court must determine whether the Defendant's policies are capable of separation. If the plaintiff can demonstrate "that the elements of a respondent's decision-making process are not capable of separation for analysis, the decision-making process may be analyzed as one employment practice" instead of proving the disparate impact of each policy separately. 42 U.S.C. § 2000e-2(k)(1)(B)(i). If the employer's system is

> pervaded by a lack of uniform criteria, criteria that are subjective as well as variable, discretionary placements and promotions, the failure to follow set procedures and the absence of written policies or justifications for promotional decisions, the court is not required to "pinpoint particular aspects of [the system]" that are unfavorable to women.

*Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 335 (N.D. Cal. 1992)(quoting *Allen v. Seidman*, 881 F.2d 375, 381 (7th Cir. 1989)); *see also Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 402 (N.D.N.Y. 1998)(holding when employment decisions are "based on variable, subjective criteria" it is appropriate to analyze them as a single

employment practice). Walmart's promotion and pay decision-making is based on manager discretion and variable, subjective criteria. (*See, e.g.,* Doc. 22, at ¶ 34, 65). Walmart did not require its managers to document the reasons for pay or promotion decisions. (*See, e.g., Id.* at ¶¶ 38, 55). Therefore, drawing all inferences in favor of Plaintiffs, it would be difficult to determine which pay policy or which promotion policy caused the disparate impact on female employees without any evidence of the process. At least for the purposes of the Motion to Dismiss, the Court will analyze all of the pay policies as one employment practice and all of the promotional policies as one employment practice.

Under Title VII, a plaintiff can establish a violation if she can show the employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Employment practices have a disparate impact if they are "facially neutral," but "in fact fall more harshly on one group then another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. at 335 n.15, 97 S. Ct. 1843. In its defense, an employer may demonstrate the practice is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). In response, a plaintiff can still establish a prima facie case if she can show the employer "refuses to adopt an alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Ricci v. DeStefano*, 557 U.S. 557, 578, 129 S. Ct. 2658, 2673, 174 L. Ed. 490 (2009)(citing §§ 2000e-2(k)(1)(A)(ii) and (C)).

"At trial…it is not enough for the plaintiff 'merely [to] prove circumstances raising an inference of discriminatory impact at issue; [the plaintiff] must prove the discriminatory impact." *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999)(quoting *Johnson v. Uncle Ben's Inc.*, 657 F.2d 750, 753 (5th Cir. 1981)), *overruled on other grounds*. However, the burden to survive a motion to dismiss is "much less onerous." *Id.* The pleading standard post-*Twombly* does not require a prima facie case to be established in the complaint, it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). A prima facie case is an evidentiary standard, not a pleading requirement; thus, it cannot be used to measure whether a complaint fails to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). At this stage, "courts have repeatedly held that defendants are wrong to insist that a disparate impact complaint must allege percentages, statistics, or data." *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 553 (M.D. Pa. 2015)(citing *McQueen v. City of Chicago,* 803 F.Supp.2d 892, 906 (N.D. Ill. 2011)(collecting cases)). Most of the cases Defendant cites in support of the Motion to Dismiss are at the summary judgment stage or later. The Defendant is seeking to hold Plaintiffs to a heightened pleading standard that simply does not apply to them.

Therefore, the Title VII plaintiff alleging disparate impact discrimination at the motion to dismiss stage must "plead that a facially neutral practice's adverse effects fall

disproportionately" on a protected class. *Powell,* 189 F.3d at 394; *see also United States v. Pennsylvania*, 110 F. Supp. 3d 544, 553 (M.D. Pa. 2015), *Ladd v. Boeing Co.,* 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006), *Jackson v. Merck & Co.*, No. CIV. A. 99-CV-3069, 1999 WL 962522, at *6 (E.D. Pa. Oct. 21, 1999).

A policy that leaves decisions to the discretion of lower level supervisors can be identified as a facially neutral policy to be challenged as having a disparate impact. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 990–91, 108 S. Ct. 2777, 2787, 101 L. Ed. 2d 827 (1988). If the discretionary system has "precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's proscription against discriminatory actions should not apply." *Id.*

Here, Defendant argues the Plaintiffs failed to identify a specific policy that led to the disparate impact. (*See* Doc. 30 at 16–19). Plaintiffs' Amended Complaint identifies three compensation policies: the 1998-2004 discretionary hourly pay policies (Doc. 22, at ¶¶ 27–38), the 2004 pay restructuring (*Id.* at ¶¶ 39-40), and implementation of pay caps in 2006 (*Id.* at ¶ 41). Plaintiffs have pleaded that Walmart's compensation policies are pervaded by a lack of uniform, objective job-related criteria and are entirely discretionary, allowing discrimination against women. (*See, e.g., id.* at ¶¶ 34, 35, 65, 71). Even if there are objective elements, a system that combines "subjective" and "objective" policies "would generally have to be considered subjective in nature." *Watson*, 487 U.S. at 989–90, 108 S. Ct. 2777. Walmart's compensation system combines subjective and objective policies.

Defendant argues "there is nothing subjective about a pay cap." (Doc. 37, at 12). However, Plaintiffs allege pay caps vary by job class, and positions in departments in which women are overrepresented are assigned to lower job classes, inserting subjectivity into the policy. (Doc. 22, at ¶¶ 39–41).

Plaintiffs have alleged that these policies had a disparate impact on them. Reese alleges that her male co-workers were paid more despite "performing the same or similar duties." (Doc. 22, at ¶ 94). Sterner alleges that she was paid approximately one dollar less than her male coworkers in the same department even though they had "equal or less tenure and experience." (*Id.* at ¶ 99–100).

Taking all allegations as true, Plaintiffs have met their burden to show that these compensation policies had a disparate impact on Plaintiffs as they were paid less than their male coworkers for the same or similar work.

Plaintiffs' Amended Complaint additionally identifies four promotional policies: the lack of formal job postings from 1998-2003 (Doc. 22, at ¶¶ 42–43), the travel and relocation requirements for promotion into certain positions (*Id.* at ¶¶ 43–45), the promotional system instituted in 2007 (I*d.* at ¶¶ 46-47), and the lack of job-related criteria for promotion decisions (*See, e.g., id.* at ¶ 48). These policies are similarly pervaded by a lack of uniform, objective job-based criteria and are almost entirely based on the discretion of lower-level managers. (*See, e.g., id.* at ¶ 42, 46, 48, 50, 65, 70, 71). Just as with the compensation policies, the promotion policies are both subjective and objective, so the system can be

characterized as subjective as a whole, even if there is an objective element. *Watson*, 487 U.S. at 989–90, 108 S. Ct. 2777.

Plaintiff Reese has alleged that these promotion policies had a disparate impact on her. She was denied a promotion after inquiring about one three times. (Doc. 22, at ¶ 90). Two male coworkers were selected for promotions despite not having the educational degree or work experience that she was told was required. (*Id.* at ¶ 90–93).

Taking all allegations as true, these policies had a disparate impact on Plaintiff Reese as she was denied a promotion while her male coworkers were selected for positions. Plaintiff Sterner's claim for promotional discrimination has already been dismissed due to the exhaustion requirement.

In sum, the Plaintiffs have met their burden at the pleading stage on the remaining disparate impact claims. Defendant's Partial Motion to Dismiss the disparate impact claim under Federal Rule of Civil Procedure 12(b)(6) is granted only as to Plaintiff Sterner's promotional discrimination claim due to a failure to exhaust administrative remedies. Defendant's Partial Motion to Dismiss the remaining disparate impact claims under Federal Rule of Civil Procedure 12(b)(6) is denied.

## B. Count I: Disparate Treatment

Defendant Walmart seeks to dismiss Plaintiff Reese's disparate treatment claim with respect to pay and Plaintiff Sterner's disparate treatment claims with respect to promotions and pay. The Court will address each of these arguments in turn.

## 1. Reese's Pay Discrimination Claim

Defendant seeks to dismiss Reese's pay discrimination claim as she has failed to establish a prima facie case. (Doc. 30, at 6–7). As discussed above with the disparate impact claim, to plead a case of disparate treatment, a Title VII plaintiff does not need to establish a prima facie case. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–12, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002); s*ee also* FED. R. CIV. P. 8(a)(2). The plaintiff only needs to "simply allege facts that provides fair notice of a plaintiff's claim and demonstrates a plausible right to relief." *D'Altilio v. Dover Twp.,* No. Civ. A. 1:06-CV-1931, 2008 WL 3925833, at *6 (M.D. Pa. Aug. 21, 2008)(internal quotations omitted). A Title VII plaintiff must plead that she suffered "an adverse employment action," defined as an action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001)), *as amended* (Dec. 20, 2004); *see also* 42 U.S.C. § 2000e(2)(a)(1). The complaint is not required to identify any comparators who have received more favorable treatment than the plaintiff. *Grigsby v. Pratt & Whitney Amercon, Inc.*, No. CIV. 1:CV-07-0785, 2008 WL 471549, at *8 (M.D. Pa. Feb. 19, 2008).

Plaintiff Reese alleged that she has suffered an adverse employment action—her "male co-workers were paid more than she was for performing the same or similar duties." (Doc. 22, at ¶ 94). Defendant argues that Reese has "no specifics about any particular pay

disparity." (Doc. 30, at 7). Reese is not required in the complaint to allege specific facts about who was paid more than her or by how much. Even if this was required, she alleges that Walmart's policy of "strongly discouraging their employees from sharing information regarding pay" prevented her from gathering any more specific facts. Taking all allegations as true, it is plausible that Reese was paid less than her male coworkers for performing the same or similar duties.

Defendant next moves for the dismissal of Reese's pay discrimination claim as it is untimely. Specifically, Defendant only moves to dismiss Reese's claims that relate to the 2004 pay restructuring. Under Title VII, charges of discrimination must be filed with the EEOC within 300 days of when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Defendant argues that because Reese's employment ended in 2004 and her charge was not filed until 2012, the claim is time-barred. (Doc. 30, at 26–28). Defendant further argues that the limitations was not tolled by *Dukes* because the 2004 policy was not at issue when the last amended complaint in *Dukes* was filed in 2002. (*Id.* at 28). The Court does not agree.

On the question of tolling, the Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 766, 38 L. Ed. 2d 713 (1974). The tolling not only applies to intervenors in the class action, but also to all

members of the purported class, including those who subsequently filed individual suits. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351–52 (1983). The Supreme Court has recognized that limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Am. Pipe*, 414 U.S. at 554– 55, 94 S. Ct. 756. However, these concerns are nonexistent for an individual plaintiff bringing a claim after class decertification because the putative class has already notified the defendant "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs." *Id*. The claims do not need to be identical to the claims asserted by the class to benefit from tolling. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985)("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."); *see also In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 300 (3d Cir. 2010), *as amended* (Oct. 20, 2010)(collecting cases); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004)("claims do not have to be identical but only substantially similar"). In cases where the courts have denied tolling, the plaintiffs have presented entirely different causes of action than the class. *See, e.g., Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1283 (11th Cir. 2003)(appellants' wrongful death claim is different in kind from the class's products liability); *Spann v. Cmty. Bank of N. Virginia,* No. 03 C 7022,

2004 WL 691785, at *7 (N.D. Ill. Mar. 30, 2004)(class action did not assert a TILA claim so tolling did not apply to plaintiffs' TILA claims).

Reese's pay discrimination claim was tolled by the *Dukes* class action. The *Dukes* class action brought a Title VII sex discrimination action against Walmart alleging disparate impact and disparate treatment. *Dukes*, 564 U.S. at 344, 131 S. Ct. 2541. Defendant Walmart cannot be prejudiced by Reese's claim because it is the same cause of action brought against them in the class action: a Title VII sex discrimination action alleging unequal pay. While the instant claim involves one policy that is different from the policies challenged in *Dukes*, this does not prevent the tolling of Reese's claim. The claim is substantively the same, even if the factual allegations differ slightly. Reese's pay discrimination claim does benefit from tolling under *American Pipe*, and therefore, is timely.

Defendant's Partial Motion to Dismiss Plaintiff Reese's compensation discrimination claim under Federal Rule of Civil Procedure 12(b)(6) is denied.

## 2. Sterner's Promotion and Pay Discrimination Claims

Defendant seeks dismissal of Plaintiff Sterner's promotion claims as she failed to exhaust the claim as required by Title VII. (Doc. 30, at 27). As discussed with Sterner's promotion claim under the disparate impact claim of the pleading, Sterner did not mention promotional discrimination in her EEOC charge. Therefore, her claim that disparate treatment resulted in promotional discrimination must likewise be dismissed.

Defendant seeks dismissal of Plaintiff Sterner's pay claims specifically related to the 2004 pay restructuring and the implementation of a pay cap in 2006 as these were not within the scope of the original EEOC charge. (Doc. 30, at 29–30). As explained in relation to the disparate impact claim, the scope of the civil action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings." *Anjelino v. New York Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999). Therefore, even though these specific policies were not explicitly mentioned in Sterner's EEOC charge, it is reasonable to expect an investigation into all of Walmart's pay policies in response to a charge of discrimination alleging unequal pay. Therefore, Sterner's equal pay claims under the disparate treatment count can proceed.

## V. CONCLUSION

In summary, Defendant's Partial Motion to Dismiss Count II under Federal Rule of Civil Procedure 12(b)(1) for a lack of standing is denied. Defendant's Partial Motion to Dismiss Count II under Rule 12(b)(6) for a failure to exhaust administrative remedies is granted only as to Sterner's promotional discrimination claims. The Partial Motion to Dismiss all other claims under Count II is denied. The Partial Motion to Dismiss Count I under Rule 12(b)(6) for a failure to exhaust administrative remedies is granted only as to Sterner's promotional discrimination claim. The Partial Motion to Dismiss all other claims under Count I is denied.

Therefore, for the reasons set forth in this Memorandum Opinion, the Court will grant in part and deny in part Defendants' Motion to Dismiss (Doc. 27). A separate Order follows.

Robert D. Mariani
United States District Court Judge